AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

12/14/22

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 3:22-mj-419
1341 Danner Avenue, Dayton, Ohio including all )
curtilage, outbuildings and vehicles on the property )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attached Exhibit A

located in the     Southern     District of     Ohio    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attached Exhibit B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | Possession with Intent to Distribute a controlled substance |

The application is based on these facts:
See Attached affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *) is requested under* 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Dustin Phillips, TFO with FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone     *(specify reliable electronic means)*.

Date: December 14, 2022

City and state: Dayton, Ohio     Caroline H. Gentry
United States Magistrate Judge

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Dustin J. Phillips, a Task Force Officer ("TFO") for both the Federal Bureau of Investigation ("FBI") and City of Dayton Police Department ("DPD"), hereby duly sworn, declare and state:

## INTRODUCTION

1. I have been employed as a law enforcement officer for the past fifteen (15) years. I currently serve as a detective with the DPD. I am presently a TFO with the FBI Dayton Resident Office's Safe Streets Task Force (SSTF). As such, I have been sworn under the Title 21, United States Code ("U.S.C."), Section 878, to serve as an officer of the United States duly empowered to conduct federal criminal investigations and execute arrests for criminal violations of Titles 18 and 21 of the U.S.C.

2. I am also a TFO with the DPD's Major Case/Drug Enforcement Unit within the Narcotic's Bureau. Since 2013, in my roles with SSTF and DPD, I have almost exclusively concentrated on the investigation of: narcotics, firearms, and gang-related criminal cases. During my law enforcement career, I have been involved in a large number of firearm-related arrests, executions of search warrants resulting in the seizure of large quantities of narcotics and firearms, participated in undercover narcotics purchases, and supervised the activities of police informants who have provided law enforcement authorities valuable and accurate information and assistance that ultimately resulted in undercover narcotics purchases and apprehensions. I have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions. Based on my training and experience – including my participation in the investigations referenced above – as well as discussions and interactions with other experienced FBI Special Agents, Task Force Officers, and narcotics investigators, I am familiar with the manner in which drug traffickers and

1

their organizations operate within the United States. Based on my aforementioned training and experience, I am familiar with the modus operandi of persons involved in the illicit distribution of controlled substances and as a result, knows the following:

   a. It is common practice for drug traffickers to often maintain residences which are used as "stash houses" or locations for drug storage and distribution.

   b. It is common practice that drug traffickers possess large amounts of U.S. Currency in order to finance their ongoing illicit drug business.

   c. It is common practice that drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other documents relating to the transportation and distribution of drugs. Drug traffickers commonly front (provide drugs on consignment) to their clients. The books, records, receipts, notes, ledgers, and other documents are kept where the drug traffickers have ready access to them.

   d. It is common for drug traffickers to provide false information to law enforcement officials regarding their identity and the address of their actual residence.

   e. That persons involved in drug trafficking conceal from law enforcement in their residences, vehicles, and businesses the following items: drugs, large amounts of currency, financial instruments, jewelry, automobile titles, other items of value and/or proceeds of drug transactions, and evidence of financial transactions relating to the acquisition and concealment of large sums of money resulting from drug trafficking activities.

   f. When drug traffickers amass large proceeds from the sale of drugs, they attempt to hide the true source of these profits, otherwise known as laundering the money. To accomplish this, drug traffickers many times utilize banks and/or financial institutions with their attendant services, including but not limited to, cashier's checks, money drafts, and letters of credit. Other entities used to launder drug proceeds include real estate firms and purported legitimate business fronts.

   g. Drug traffickers commonly travel to facilitate their trafficking activities. After purchasing drugs, traffickers commonly transport, or cause to be transported, drugs to areas in which they will be distributed. Common methods of transportation include, but are not limited to, commercial airlines, and rental/private automobiles.

   h. It is common practice that drug traffickers commonly maintain books and similar documents which reflect names, addresses, and/or telephone numbers of their associates in the drug trafficking organization. This information can often be stored in cellular phones in places such as the contacts list.

i. Drug traffickers often take, or cause to be taken, photographs of themselves, their associates, their property and their product, and that the photographs are usually maintained at the residences and/or businesses of drug traffickers. Photographs such as these can commonly be found and stored in cellular phones.

j. Drug traffickers commonly have in their possession, (that is on their person, at their residence, and/or their business) weapons, including firearms of various types. Firearms are used to protect and secure a drug trafficker's property which may include, but is not limited to, narcotics, jewelry, narcotics paraphernalia, books, records, and U.S. Currency.

k. Drug traffickers frequently maintain hidden compartments within their residence and vehicles to hide drug trafficking evidence (money, ledgers, drugs, etc.), bury evidence in containers such as shoe boxes, or hide the evidence in safes.

l. The exact quantities, prices, dates, and methods of delivery of drugs are seldom discussed in detailed terms over the telephone. These details are usually agreed upon during face-to-face transactions. For this reason, most telephone conversations regarding drugs are very brief and often in code, understood by the traffickers and designed to mislead or confuse non-participants of the conversations. Drug traffickers make extensive use of cellular phones and text messaging beepers/pagers to facilitate contacting one another. When calling a beeper or text messaging, traffickers commonly input the number that should be called and sometimes add additional instructions in the form of additional digits. The structure of a drug distribution organization usually consists of sources of supply, wholesale distributors, retail distributors, and the ultimate consumers. The wholesale distributors often have more than one source of supply, and likewise the retail distributors often obtain drugs from more than one wholesale distributor. After receiving a quantity of drugs, the source of supply will often move the drugs to a location other than where he/she sells them to the wholesale distributors. The location of the source of supply's so-called "stash house" is generally a well-guarded secret known only to the source of supply and his closest associates. Most of the drugs, as well as diluting and packaging materials and weighing equipment, are usually kept at the "stash house." Only those amounts needed for immediate sale are usually kept at the point of sale.

m. I have repeatedly encountered a practice wherein drug traffickers distribute a cellular telephone number to their drug customers, often described by traffickers as a "money phone." The money phone is used primarily to communicate with those customers. The customers will subsequently call the trafficker on that cellular telephone number to arrange a purchase of drugs as needed. The trafficker will many times field calls from several customers at once, and then direct all those customers to travel in their car to a designated meeting point. Once all the customers have driven to the designated place, the drug trafficker will appear in his vehicle, quickly conduct hand to hand drug transactions with each customer, and then drive away. When drug traffickers use a "money phone", they also

3

    commonly have a personal phone with which to call and contact family or engage in other personal communications. Thus, it is common practice for drug traffickers to carry multiple phones.

n. Drug traffickers frequently use rental vehicles for everyday travel and will maintain another vehicle, usually at an out of sight location, to facilitate their drug trafficking business.

o. Evidence of past communication between drug traffickers can be found in saved or deleted text messages, call logs, and other forms of electronic communication occurring over, stored in, or accessed by the cellular phone.

## PURPOSE OF AFFIDAVIT

3. I make this affidavit in support of an application for a search warrant at the following residence – namely:

    a. 1341 Danner Avenue, Dayton, Ohio 45417, including any outbuildings, basements, garages, or sheds located on its curtilage (hereinafter "**Location 1**"). **Location 1** is described more fully in Attachment A, which is incorporated herein by reference;

4. As detailed more fully below, I submit that there is probable cause to believe that evidence of a crime as well as contraband, fruits of a crime or other items illegally possessed in relation to the following offenses exist and can be found inside **Location 1** – namely:

    a. Possession with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, § 841.

5. A list of specific items to be seized from the premises described above is attached hereto as Attachment B, and Attachment B is incorporated herein by reference. Based on my training and experience as well as the facts contained in the affidavit, I believe that there is probable cause to believe that the items listed in Attachment B will be found at the premises described above. I have not included every detail of the investigation, but only information necessary to establish probable cause that evidence associated with above-described drug trafficking offenses

is located at **Location 1**.

## PROBABLE CAUSE

6. On December 13, 2022, U.S. Magistrate Judge Peter B. Silvain Jr. signed an indictment arrest warrant for **SUMPTER A. MILLER** (hereinafter referred to as **MILLER**). This indictment was based off a traffic stop which occurred on July 29, 2022 near the intersection of North James H. McGee Boulevard and North Gettysburg Avenue. During this traffic stop, **MILLER** was driving a white 2015 Dodge Charger with Ohio license plate JSS4134, which is registered to him. While investigating and conducting the traffic stop, officers located a stolen, loaded Sig Sauer 9mm pistol in the middle console. **MILLER** was subsequently arrested and booked into the Montgomery County Jail at the conclusion of the traffic stop. I was made aware of this arrest and took over the investigation after **MILLER** was arrested.

7. While checking **MILLER's** criminal history, I found that he has been convicted of several crimes which prohibit him from legally possessing a firearm. On April 8, 2004, **MILLER** was convicted of Possession of Cocaine (Crack), with a Major Drug Offender Specification, in Montgomery County, Ohio in Case Number 02CR01916. On September 10, 2004, **MILLER** was convicted of Possession With Intent to Distribute Cocaine, in the Southern District of Ohio in Case Number 03CR084. Lastly, on September 10, 2004, **MILLER** was convicted of Conspiracy to Buy, Receive, Possess, and Obtain Control of, With Intent to Sell a Motor Vehicle, Knowing that an Identification Number for Such Vehicle has been Removed, Obliterated, Tampered with, and Altered, in the Southern District of Ohio, in Case Number 03CR045.

8. I also conducted a search of the Ohio Law Enforcement Gateway (OHLEG) and found that **MILLER** has several vehicles registered to him, including but not limited to a 2019 red Chevy Silverado with Ohio license plate JVQ9104. I also checked the Montgomery County

Auditor's website and found that **MILLER** is the listed owner of several properties in the City of Dayton, Ohio. One of the properties that is listed as being owned by **MILLER** is **Location 1.**

9. Once the arrest warrant on the Indictment was issued, I checked all the addresses owned by **MILLER** and located several of his vehicles parked in the back yard of **Location 1.** The red Silverado was one of the vehicles parked in the back yard. This house's exterior appeared to be partially remodeled and has a wrought iron front security door.

10. Members of the Southern Ohio Safe Streets Task Force began conducting surveillance on **Location 1** and at approximately 12:00pm, we observed a blue pickup truck pull into the back yard of the residence and park. The driver of this vehicle went to the front door and knocked. He was let in by an unknown person and the door closed behind him. This male was inside the house for approximately 3-5 minutes and came back out the front door. He was followed by **MILLER** who used a set of keys to lock the front door behind him as he left. The male returned to his truck and **MILLER** went to the red Silverado truck and both vehicles drove out of the back yard. As **MILLER** was leaving the house and getting into his truck, he was seen carrying a green Crown Royal cloth bag. From my training and experience, I am familiar with how drug houses operate and how drug transactions occur. Seeing the male enter the house and leave within a few minutes of arriving, I believed it was possible that a drug deal had just occurred inside the house.

11. Seeing **MILLER** leave the house, we followed him and requested a marked Dayton Police Cruiser conduct a traffic stop on the car. The vehicle was stopped at the intersection of Haller Avenue and Weaver Street. **MILLER** was the only occupant in the truck and was immediately ordered out and taken into custody. Due to the outstanding arrest warrant of **MILLER** and logistical limitations, officers did not follow the blue pickup truck.

12. **MILLER** was found to be in possession of $879 in US currency and two sets of

keys. As **MILLER** was being arrested and taken into custody, his truck was going to be towed. Pursuant to Dayton Police Department tow policy, an inventory of the truck was conducted. During the inventory of his truck, officers located another $3,000 in US currency in the middle console, a baggie of marijuana inside the green Crown Royal bag he carried out of the house, two cellular phones, and several additional sets of keys. I attempted to speak to **MILLER** however he indicated he did not with to speak to me without a lawyer present.

13. I took possession of all the items recovered from **MILLER** and the vehicle, and **MILLER** was transported and booked into the Montgomery County Jail without incident. I immediately left the scene and began preparing a search warrant for **Location 1.** While on scene at the traffic stop, as well as while working on the warrant, one of the cell phones constantly rang multiple times, which is indicative of a phone used by an active drug trafficker.

14. From my training and experience, I believe that the behavior witnessed at MILLER's house, the multiple phones – especially with one ringing constantly, the use of a Crown Royal bag to store controlled substances, the multiple properties and sets of keys, and the large amount of currency found on **MILLER**'s person and in his vehicle are all indicative of drug trafficking behavior.

15. From my training and experience, I am aware that drug traffickers will often times own several properties and/or several vehicles which allows them to diversify where contraband is kept. Many times these properties, vehicles, and other assets are purchased using proceeds of drug trafficking. I am also aware that drug trafficking is a largely cash business and dealers will often times be in possession of large amounts of money. Security doors, such as the one affixed to the front of this house are often times used on drug houses due to the extra layer of security they provide. I am also aware that drug traffickers will often times store large amounts of narcotics

inside their houses and arrange to make deals only carrying a small amount of narcotics with them to minimize their risk.

16. From my training and experience, I further know that trafficking in marijuana and other drugs is a violation of 21 U.S.C. § 841.

## CONCLUSION

17. Based on the facts set forth in the Affidavit, I believe there is probable cause that evidence associated with the above listed drug trafficking offenses are located within the residences and surrounding curtilage of **Location 1**.

Dustin J. Phillips
Task Force Officer
Federal Bureau of Investigation

Sworn and subscribed before me via telephone on this 14th day of December, 2022.

Caroline H. Gentry
United States Magistrate Judge

## Attachment A

**Location 1:** The place to be searched is 1341 Danner Avenue, Dayton, Ohio 45417 and the surrounding curtilage. 1341 Danner Avenue, Dayton, Ohio is a one-story light gray, single family home with white trim and a white wrought iron security door. 1341 Danner Avenue is located on the west side of Danner Avenue. 1341 Danner Avenue, Dayton, Ohio 45417 is further depicted in the following photograph.



## ATTACHMENT B

## PROPERTY TO BE SEIZED

The items to be searched for and seized are evidence, contraband, fruits of crime, and other items illegally possessed, as well as property designed for use, intended for use, relating to violations of 21 U.S.C. §§ 841 and 18 U.S.C. §§ 922 including, but not limited to:

A. Log books, records, payment receipts, notes, and/or customer lists, ledgers, and other papers or electronic records relating to the transportation, ordering, purchasing, processing, and distribution of controlled substances.

B. Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to domestic and foreign travel to obtain and distribute narcotics and narcotics proceeds, including, but not limited to airline receipts, vehicle rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, truck logs, travel agency vouchers, notes, records of long distance telephone calls, e-mail and other correspondence.

C. Address and/or telephone books and papers reflecting names, e-mail and physical addresses and/or telephone numbers of individuals, partnerships, or corporations involved in drug trafficking and money laundering.

D. Financial records, financial statements, receipts, statements of accounts and related bank records, money, drafts, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, escrow documents, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transferring, concealment, and/or expenditure of money.

E. Electronic equipment such as surveillance video and related equipment, pagers, computers, electronic organizers, facsimile machines, cellular telephones, caller ID, telephone answering machines, police scanners and two-way radios, money counters.

F. United States currency, precious metals, coins, bullion, jewelry, and financial instruments, including, but not limited to stocks and bonds.

G. Photographs and/or photographic albums or video tapes and recordings of houses and other real estate, automobiles, and of other assets, persons, and/or controlled substances.

H. Indicia of occupancy, residency, and/or ownership of the premises and vehicles including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, tax bills, titles, and vehicle registrations.

I. Illegal drugs, including but not limited to marijuana, and other materials, paraphernalia and/or equipment and tools used in the drug trade.

J. Firearms and ammunition.